IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 17, 2014 Session

# WILLIAM GREGORY HALL, JR. v. HILLARY HUDGENS HALL

**Appeal from the Circuit Court for Knox County, Fourth Circuit**
**No. 101264      William K. Swann, Judge**

_____

### No. E2013-02227-COA-R3-CV-FILED-SEPTEMBER 15, 2014

_____

This is an appeal of the trial court's grant of a one-year extension of an order of protection. The petitioner/father had initially obtained an *ex parte* order of protection against the respondent/mother in August 2005. Subsequent to the expiration of that *ex parte* order, the parties were divorced in January 2007, with the trial court incorporating into the final decree of divorce an agreed permanent parenting plan awarding the parents equal co-parenting time with their two minor children. Five years later under the docket number of the previous order of protection, the father initiated the instant action by filing an *ex parte* petition for a new order of protection against the mother. The trial court granted an *ex parte* order and subsequently entered a one-year order of protection to which the parties agreed on August 30, 2012. This order of protection, *inter alia*, allowed the mother three telephone calls per week with the children but no in-person contact. On October 1, 2012, the father filed a petition to modify the permanent parenting plan, utilizing the docket number of the original divorce action. In July 2013, the father filed, again within the divorce action, a motion to consolidate the order of protection and permanent parenting plan proceedings, requesting that the order of protection be extended indefinitely. Following a bench hearing, the trial court granted a one-year extension of the order of protection. The mother appeals. Because we determine that the preponderance of the evidence does not support a finding that the father proved the allegation of domestic abuse at the time the extension was granted, we vacate the trial court's extension of the order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

J. Terry Holland, Knoxville, Tennessee, for the appellant, Hillary Hudgens Hall.

Hilary Williams Burgin, Maryville, Tennessee, for the appellee, William Gregory Hall, Jr.

**OPINION**

I.  Factual and Procedural Background

The petitioner, William Gregory Hall, Jr. ("Father"), first petitioned for and obtained an *ex parte* order of protection against the respondent, Hillary Hudgens Hall ("Mother"), on August 29, 2005, during the pendency of their divorce proceedings. Both the order of protection and the divorce actions were initiated in the Knox County Fourth Circuit Court but filed under separate docket numbers. The parties' two minor daughters ("the Children") were ages six years and eighteen months, respectively, when the initial *ex parte* order of protection was entered. Father is a practicing attorney, and Mother is a former elementary school teacher, although testimony demonstrated that she had not been regularly employed outside the home since before the Children were born.

The 2005 *ex parte* order of protection was extended once through an agreed bridging order entered on September 15, 2005, with an agreed hearing date set for November 17, 2005. The record contains no indication of a November 17, 2005 hearing, and by statute, the 2005 *ex parte* order would have expired on that hearing date without further agreement by the parties or demonstrated proof of Father's allegations. *See* Tenn. Code Ann. § 36-3-605(b) (providing that upon issuance of an *ex parte* order of protection, a hearing shall be held within fifteen days of service on the respondent to determine whether the order should be dissolved or extended upon proof of the allegation of domestic abuse, stalking, or sexual assault by a preponderance of the evidence). It is undisputed that regarding the divorce action, the trial court eventually entered an agreed permanent parenting plan order with the final divorce decree on January 10, 2007, awarding both parties equal co-parenting time with the Children.[1]

The instant action was initiated by Father on August 8, 2012, when he filed a petition alleging that on the previous day, Mother had become verbally and physically abusive to the parties' oldest daughter and to him when he attempted to settle the conflict. Father also alleged that Mother had driven while intoxicated with the Children in her vehicle; Mother's behavior made him fear for the safety of his family; and the Children, then thirteen and eight

---

[1]In his brief on appeal, Father states that the January 10, 2007 "entry of the Final [Divorce] Decree effectively terminated the 2005 OP," but upon our review of the record, we determine that this first *ex parte* order actually had expired in November 2005. *See* Tenn. Code Ann. § 36-3-605(b); *Kite v. Kite*, 22 S.W.3d 803, 806 (Tenn. 1997) (interpreting an earlier version of the statute that provided for a ten-day period in which an *ex parte* order of protection would expire if the trial court failed to set a hearing).

years of age, had reported Mother's behavior toward the oldest daughter as repeatedly abusive. The trial court granted Father an *ex parte* Order of Protection on August 9, 2012.[2] On August 30, 2012, the date set for hearing on Father's petition, the parties reached an agreement, and the trial court entered an agreed one-year order of protection without conducting a hearing. The order provided, *inter alia*, that Mother would have contact with the Children only through fifteen-minute telephone calls scheduled on Sundays at 8:00 p.m. and Wednesdays and Fridays at 7:30 a.m. Pursuant to the order, Mother could attend the Children's extracurricular functions and sporting events, but she was prohibited from approaching the Children or Father at these events. *See* Tenn. Code Ann. § 36-3-606 (2014) (providing for the establishment of temporary custody or temporary visitation rights in regard to the minor children of parties within an order of protection). This order of protection was set to expire on August 29, 2013.

On September 20, 2012, utilizing the docket number of the divorce action, Father filed a petition to modify the permanent parenting plan, attaching a proposed temporary parenting plan that incorporated the co-parenting arrangement under which the parties and Children had been living pursuant to the order of protection. On July 25, 2013, approximately one month before the order of protection was to expire, Father filed within the divorce action a "Motion to Consolidate Order of Protection and For Additional Relief," seeking to consolidate the two actions and to extend the order of protection pending the conclusion of the proceedings regarding the permanent parenting plan.

Following a hearing conducted on September 4, 2013, the trial court granted Father a one-year extension of the order of protection against Mother and entered a written order that same day, incorporating essentially the same provisions included in the 2012 order of protection. Pursuant to this order, the parties were to have "social contact" within "specific parameters," delineated as follows:

> [T]he parties and the Respondent and the children shall have no contact except: Respondent shall have three (3) telephone calls with the minor children on Sundays at 8:00 p.m. and Wednesdays and Fridays at 7:30 a.m., with each call to have a maximum duration of 15 minutes. The Respondent may attend the children's school, sporting and extracurricular activities, but shall not approach the Petitioner or minor children. All other communication shall occur and/or be facilitated through Our Family Wizard, with the renewal fee to be paid by the Petitioner. The Respondent shall only have telephone contact with children and no other contact, electronically or otherwise. Other

---

[2]The 2012 *ex parte* Order of Protection was entered by Chancellor Michael W. Moyers, sitting by interchange.

contact between the children and Respondent shall be pursuant to the Temporary Parenting Plan in Docket #99970.

The order of protection further referenced the divorce action in a notation that co-parenting would be supervised "as provided by any parenting plan adopted by this Court in Hall vs. Hall, 4th Circuit, #99970."

The trial court considered but did not specifically grant or deny Father's motion to consolidate the order of protection and divorce actions. Wife, represented by different counsel than at trial, timely appealed the extended order of protection granted in the September 4, 2013 order. As a point of practice, we note that the appellate record contains several extraneous documents from the divorce case file that were improperly included in the record for the instant appeal of the extended order of protection. *See* Tenn. R. App. P. 24(g).[3] On October 7, 2013, the trial court entered an order in the divorce action, incorporating the transcript of its ruling at the close of the September 4, 2013 hearing as a memorandum opinion. Because the trial court heard evidence and ruled upon Father's request for an extension of the order of protection during the September 4, 2013 hearing, Mother properly submitted the transcript of the hearing to the trial court clerk for inclusion in the instant appellate record, despite its originally reflecting only the docket number of the divorce case. However, upon Mother's designation of the record and in the absence of objection by Father, the trial court clerk improperly included several documents from the divorce action in the record for this appeal. The order extending the order of protection, which upon review we determine to be an appealable final judgment, references only Father's temporary parenting plan from the divorce action. This temporary parenting plan, therefore, should have been attached to the order, but additional documents from the divorce proceedings are extraneous and will not be considered in our review.

On October 29, 2013, the trial court, Judge William K. Swann, entered *sua sponte* an Order of Recusal inclusive of both actions, citing an *ex parte* communication initiated personally by Mother as the cause of his recusal. On November 23, 2013, Sixth Judicial District, Division II, Presiding Judge Bob R. McGee entered an order assigning Chancellor

---

[3]Tennessee Rule of Appellate Procedure 24(g) provides:

> (g)    Limit on Authority to Add or Subtract from the Record. – Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court **with respect to those issues that are the bases of appeal**.

(Emphasis added.)

Michael W. Moyers of the Knox County Chancery Court to hear by interchange any further proceedings in both this action and the divorce action.

## II. Issue Presented

Although couched as five sub-issues citing various portions of the applicable statute, Mother presents one issue on appeal, which we have restated as follows:

> Whether the trial court erred by granting Father an extension of the order of protection.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison*, 338 S.W.3d at 426; *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Extension of Order of Protection

Mother contends that the trial court erred by finding sufficient basis to grant an extension of the order of protection. Father posits that the trial court properly found cause to warrant the extension because he established that he experienced ongoing fear of Mother's continued "violent and erratic behavior" toward him and the Children. We conclude that Father failed to prove by a preponderance of the evidence his allegation of ongoing domestic abuse.

Relevant to the procedural history of the instant action, spanning the course of Father's August 2012 petition for an order of protection, the trial court's grant of an *ex parte* order, the grant of an agreed one-year order of protection, and finally the grant of a one-year extension, Tennessee Code Annotated § 36-3-605 (2014) provides in pertinent part:

> (a)     Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of

protection. An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.

(b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period. . . .

"Abuse" is defined by the appropriate statute in pertinent part as "inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, malicious damage to the personal property of the abused party . . . ." Tenn. Code Ann. § 36-3-601(1) (2014). "Domestic abuse" is statutorily defined as committing abuse against a "domestic abuse victim," the definition of which includes in pertinent part a "former spouse" and "adults or minors related by blood or adoption." Tenn. Code Ann. § 36-3-601(4), (5)(A), (5)(D).

In the instant action, the trial court entered an *ex parte* order of protection on August 9, 2012, upon Father's sworn allegations that Mother had become verbally and physically abusive to the parties' oldest daughter and to him on the previous day, that the Children had reported Mother as repeatedly abusive to the oldest daughter, that Mother had driven when intoxicated with the Children in her vehicle, and that Father was placed in fear for his and his family's safety by Mother's behavior. The trial court subsequently entered a one-year order of protection on August 30, 2012, upon the agreement of the parties. *See, e.g., Furlong v. Furlong*, 370 S.W.3d 329, 338-39 (Tenn. Ct. App. 2011) (analyzing the clarity of agreed amendments to an order of protection, entered upon the trial court's approval of the announced agreement of the parties, as provisions ordered by the trial court); *Wadhwani v. White*, No. M2005-02655-COA-R3-CV, 2007 WL 27329 at *4 (Tenn. Ct. App. Jan. 3, 2007) (recognizing the validity of an agreed order of protection entered without specific findings of fact while upholding the trial court's subsequent modification of the order).

The August 30, 2012 order of protection, completed on a form utilized by the trial court, includes a checked box by a paragraph delineating the effect of the agreement as follows in pertinent part:

-6-

**The parties have reached a simple, binding agreement** which this court today memorializes. Accordingly, the court makes no finding of fact; <u>no hearing has been held</u>; no testimony has been offered; and the respondent has made no admission with reference to this proceeding by virtue of his/her consent to the agreement, through counsel, or otherwise. This binding agreement explicitly prohibits and requires certain things and is fully enforceable as a matter of law. This court order, however, merely memorializes that binding agreement between the parties does not explicitly prohibit anything by its own terms. All prohibited and required actions of this binding agreement come exclusively from terms set out by the parties. The court orders that the parties shall strictly comply with each and every term of their agreement, whatever those terms may be. Failure to comply with those terms is punishable in criminal contempt.

(Emphasis in original.)

Consequently, the September 4, 2013 hearing addressing, *inter alia*, Father's motion to extend the order of protection constituted the trial court's first opportunity to make and enter findings of fact on the matter at issue. In its order extending the order of protection for one year, the trial court, again utilizing its own form, checked and initialed boxes stating that the parties had not reached an agreement and that a hearing had therefore been conducted. The trial court expressly found that Father had "shown good cause" to extend the order of protection "by a preponderance of the evidence." The written order of protection contains no further findings of fact despite the inclusion on the form order of the following blank space for such findings:

> The court makes a particularized finding of fact that the respondent committed the following acts: [To be set out with specificity by the Judge/Special Master]
>
> _____
> _____

In its ruling issued at the close of the hearing, the trial court explained that it had heard the testimony of both parties and that it had "heard much of the parenting difficulties of [Father] and [Mother] today and of course previously." The court incorporated into the extended order of protection the co-parenting constraints upon Mother imposed by the August 2013 order of protection, essentially identical to Father's proposed temporary parenting plan.

At trial, Father described the events leading to his 2012 petition for an order of protection. As to the year during which the order of protection had been in effect, he testified that Mother had approached the Children and talked to them at more than one soccer game.

He was unable, however, to offer any specific date. He did not allege any violent or disruptive incident at a soccer game or other occasion in the preceding year. As the trial court noted, the provisions of the August 2012 order of protection allowed Mother to attend the Children's sporting and extracurricular events but did not allow her to approach the Children or Father. Father testified that he had arranged for Mother and the Children to participate in several supervised dinners together, although he noted that Mother had missed two of these dinners.

When Father was questioned during direct examination regarding whether he was in continuing fear for himself and the Children if contact with Mother were extended beyond the bounds of the order of protection, he answered in the affirmative. During cross-examination, however, Mother's trial counsel, Virginia A. Schwamm, asked Father to explain this fear, and the following exchange occurred:

Ms. Schwamm:   Let me talk about since the order of protection that you're in fear, because you've testified the only violations are that she's approached the children. So how are you in fear?

Father:   Based on what you would call hearsay, statements that she's made to others.

Ms. Schwamm:   What kind of statements?

Father:   Facebook postings, telephone conversations, emails.

Ms. Schwamm:   And this is since the order of protection?

Father:   Yes.

Ms. Schwamm:   What kind of statements do you recall being made?

Father:   I'd have to look back through them, but I do recall numerous statements being made about my current girlfriend and about the children not being as respectful as she would like them to be. And, frankly, Ms. Schwamm, I'd just have to look back at the Facebook postings, there have been so many of them.

| | |
|---|---|
| Ms. Schwamm: | I'm sorry, but how are – the children being respectful, how does that place you in fear? |
| Father: | I don't know that it does. |
| Ms. Schwamm: | How does statements she's made about your current girlfriend place you in fear? |
| Father: | Well, she's previously been abusive towards partners of mine in front of the children, in front of anyone who might be around, and to the point that all involved were fearful for their safety. |
| Ms. Schwamm: | When was this? |
| Father: | Coming to mind are numerous occasions with my second wife, [S.K.], where she would show up at the house – where [Mother] would show up at my home and [S.K.] intoxicated and – |
| Ms. Schwamm: | But, Mr. Hall, this is since the order of protection. |
| Father: | Since the order of protection I . . . . |
| Ms. Schwamm: | You claim you're still in fear and trying to get it extended beyond the statutory length. So what fear do you have? |
| Father: | Well, maybe I'm not understanding your question, Ms. Schwamm. If you're asking me what has happened during the course of the order of protection that would place me in fear of her behavior, I've told you that all of that would be hearsay and from what I understand she's said to other people. I have not had any personal contact with [Mother] during the order of protection. |
| Ms. Schwamm: | I'm trying to understand. You've testified you're in fear, and I'm trying to understand what she's done that has put you in such fear that you're entitled to extend this. |

Father:                    I believe I've testified to that.  And it has not happened during the course of this order of protection.

Regarding Father's allegation that she had approached the Children at soccer games, Mother testified that she had seen the Children in the parking lot and responded in kind to their greetings of "Hi."  She denied violating any provisions of the August 2012 order of protection.  She also stated that Father had allowed the Children to speak with her at church on Easter Sunday.  She acknowledged difficulties in her relationship with the parties' oldest daughter, which she opined were exacerbated by the provisions of the order of protection.

Father also alleged that Mother was arrested in the preceding year for driving under the influence of alcohol and had been stopped by police on a second occasion.  Mother admitted to pleading guilty to a reduced charge of reckless driving following one arrest for driving under the influence of alcohol.  It is undisputed that Mother was not responsible for transporting the Children at the time of this incident.  Mother also explained that she had been stopped by police on a separate occasion when she became confused on one-way streets near the University of Tennessee campus. According to Mother, she was surprised on that occasion when the officer, apparently referencing the order of protection, asked her if she was intending to drive by Father's downtown office in Knoxville.

Father correctly notes that the trial court was not required to find an immediate and present danger of abuse or a violation of the order of protection in order to grant an extension pursuant to Tennessee Code Annotated § 36-3-605(b).[4]  As this Court has explained:

> A party seeking entry of an ex parte order of protection has a significant burden of proof; he or she must demonstrate "[a]n immediate and present danger of abuse to the petitioner."  Tenn. Code Ann. § 36-3-605(a). [The respondent] contends [the petitioner] had to carry that burden of proof, to prove an immediate and present danger of abuse to obtain an extension or modification of the order.  We, however, find his contention is without merit.
>
> A party seeking a modification or extension of an existing order of protection, which is the case here, has a less onerous burden of proof than that suggested by [the respondent].  The party seeking a modification or extension only needs to prove "the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence."  *See* Tenn. Code Ann. § 36-3-

_____

[4]Upon finding proof of a violation, a trial court may extend an order of protection for a period of five years, and upon a subsequent violation, up to ten years.  Tenn. Code Ann. § 36-3-605(d).

605(b); *see also Collins v. Pharris*, No. M1999-00588-COA-R3-CV, 2001 WL 219652, at *4 (Tenn. Ct. App. March 7, 2001).

> To obtain the modification or extension of the Order of Protection at issue, [the petitioner] had the burden of proving by a preponderance of the evidence, the allegation of domestic abuse, the definition of which includes placing an adult in fear of physical harm. *Collins*, 2001 WL 219652, at *5 (citing Tenn. Code Ann. § 36-3-601(1) (Supp. 2000)) . . . .

*Cardwell v. Hutchinson*, No. E2009-02680-COA-R3-CV, 2010 WL 4810671 at *4 (Tenn. Ct. App. Nov. 24, 2010) (quoting *Wadhwani*, 2007 WL 27329 at *3).

Father relies in part on this Court's decisions in *Cardwell* and *Wadhwani* to support his contention that he carried his burden of proof to warrant an extension of the order of protection. We disagree and find the facts involved in those earlier decisions highly distinguishable from the instant action. In *Cardwell*, the mentally disabled petitioner had been sexually assaulted by the respondent, who had been her church youth leader. *Cardwell*, 2010 WL 4810671 at *4. The *Cardwell* respondent had not violated the order of protection in the preceding year, but this Court upheld the trial court's extension of the order where testimony, including that of a psychologist who examined the petitioner, demonstrated that the petitioner was extraordinarily vulnerable emotionally and fearful of encountering the respondent at her church or in the community. *Id.* In *Wadhwani*, this Court upheld the trial court's grant of an extension and modification of a social-contact order of protection when testimony demonstrated that the respondent had repeatedly appeared "uninvited and unannounced" at the petitioner's residence during the pendency of the initial order of protection, causing her to feel threatened and frightened, and had admitted to driving by the petitioner's home "'all of the time.'" *Wadhwani*, 2007 WL 27329 at *3-4.

In contrast, Father in the instant action was unable to offer specific details regarding any occurrence during the year the order of protection was in effect that caused him to fear for his safety or that of his Children if the order were not extended. At the outset of trial, Father's counsel requested the grant of his motion to consolidate the order of protection and divorce actions so that "the order of protection will not expire, it will be dealt with at mediation or it will be dealt with at the final hearing or some other agreement along the way of the post-divorce matter." The trial court did not act upon the motion to consolidate the actions, but upon a careful and thorough review of the record, we determine that much of the proof presented by the parties focused on post-divorce issues rather than allegations of domestic abuse associated with an extension of the order of protection. We conclude that the evidence does not preponderate in favor of the trial court's finding that Father met the

statutory requisite for an extension of the order of protection. We therefore vacate the extension.

Mother requests that upon remand, she be awarded co-parenting time she has lost with the Children since entry of the extended order of protection. We conclude that such relief is not appropriate in connection with this appeal. All further co-parenting issues should be addressed within the divorce action. *See* Tenn. Code Ann. § 36-6-405 (2014) (delineating proceedings for modifying permanent parenting plans).

## V. Conclusion

For the reasons stated above, we vacate the trial court's judgment granting a one-year extension of the order of protection against Mother. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below. Costs on appeal are taxed to the appellee, William Gregory Hall, Jr.

_____
THOMAS R. FRIERSON, II, JUDGE